```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

RWP CONSOLIDATED, L.P., ET AL.,   :
     Plaintiffs,                  :
                                  :
v.                                :    Case No. 3:05cv1901 (JBA)
                                  :
THOMAS J. SALVATORE,              :
     Defendant.                   :
```

### RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 20]

Plaintiffs RWP Consolidated, L.P. ("RWP"), Evergreen Investments, LLC ("Evergreen Investments"), Robert W. Plaster ("Plaster"), individually, and as Trustee of the Robert W. Plaster Trust ("the Trust") filed a two-count Complaint[1] against defendant Thomas J. Salvatore ("Salvatore"), alleging breach of contract and seeking imposition of a constructive trust. (See Compl. [Doc. # 1].)  Defendant now moves to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

For the following reasons, defendant's motion to dismiss Count One (breach of contract) will be DENIED as to plaintiffs RWP, Evergreen Investments, and Plaster individually, and GRANTED as to Plaster as Trustee of the Trust.  Defendant's motion to dismiss Count Two (constructive trust) will be DENIED as to plaintiffs RWP, to Plaster individually and as Trustee for the Trust, and GRANTED as to Evergreen Investments.

---

[1] Plaintiffs invoke the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

**I. STANDARD**

In reviewing the sufficiency of a claim under Fed. R. Civ. P. 12(b)(6), "[t]he issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "When a federal court reviews the sufficiency of a Complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." Scheuer, 416 U.S. at 236.

Considering the simplified standard for pleading under Fed. R. Civ. P. 8, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. at 514 (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

**II. FACTUAL BACKGROUND**

The Complaint alleges the following facts. Plaintiff Plaster, as sole Trustee of the Trust, became a limited partner in TJS Partners, L.P. ("TJSP"), a hedge fund conceived by defendant Salvatore, in 1997. (See Compl. ¶¶ 4, 9.) Salvatore was the sole general partner of TJSP and as such made all the investment decisions. (Id. ¶ 10.) In January 1998, TJSP purchased shares of common stock of Securities Associates International, Inc. ("SAI"), and became its largest shareholder.

2

(Id. ¶ 11.)  At the same time, Salvatore urged Plaster to purchase an additional 300,000 shares of SAI common stock (the "Shares").  (Id.)  The Shares were issued to Evergreen National, L.P., which later became RWP.[2]  (Id. ¶ 12.)

Shortly thereafter, TJSP lost about half of its capital investment (approximately $40 million), and in order "to create the appearance that TJSP nonetheless had strong, supportive and long-term partners, Salvatore urged Plaster to stay the course and refrain from withdrawing from TJSP or selling shares of SAI." (Id. ¶ 13.)  In April 1998, the Trust assigned its partnership interest in TJSP to RWP (id. ¶ 9), but Plaster otherwise complied with Salvatore's request until November 1999, when he notified TJSP and Salvatore that he "wanted to withdraw from TJSP and sell all of the Shares" due to SAI's poor performance (id. ¶ 15).  To induce Plaster to stay in, Salvatore entered into a series of written agreements between July 2000 to August 2002, in which he personally guaranteed the return on the investment in the Shares. (Id.)  Among other things, Salvatore agreed "to a valuation of the Shares and to payment of a guaranteed return, based on that valuation, upon any sale of the Shares."  (Id.)

The last of these agreements ("the Agreement") was entered into on August 22, 2002 with a termination date of January 1,

---

[2]The sole general partner of RWP is Evergreen National Corp. and the sole limited partner is the Trust.  (Compl. ¶ 2.)

3

2004,[3] and was signed by Salvatore under no title and by Larry Weis as "V.P. Evergreen Investments, LLC" (id. at Ex. A) "with the authority of and as agent for plaintiff RWP Consolidated, the record-owner of the Shares"[4] (id. ¶ 15).  The Shares had a valuation of $1,770,000 with interest to accrue at 4.75% per annum.  (Id. at Ex. A.)  In December 2003, SAI was recapitalized, and the Shares were sold back to SAI for $3000 paid to RWP.  (Id. ¶ 17.)  Plaintiffs thus allege that Salvatore breached the contract by failing to pay them the $1,767,000 ($1,770,000 less $3000) plus 4.75% interest guaranteed by the Agreement upon the earlier of the sale of the Shares or the termination of the Agreement on January 1, 2004.  (Id. at Ex. A; ¶¶ 19, 22.)

Plaintiffs also allege that Salvatore, as general partner in TJS Partners, engaged in self-dealing and therefore breached his fiduciary duty to plaintiffs.  (Id. ¶ 27.)  According to plaintiffs, "SAI's recapitalization . . . has assisted SAI in making a recovery from which Salvatore stands to benefit financially," as "he and/or TJSP will . . . receive mon[ies] from SAI," either as stockholder, board member, chair or consultant.

---

[3]The Robert W. Plaster Trust is a 99.9% owner of Evergreen Investments and Robert Plaster is its chairman.  (Compl. ¶ 3.)

[4]Three separate entities share the name Evergreen: Evergreen Investments (signatory on the contract and plaintiff to this action), Evergreen National, L.P. (the original owner of the shares which have since become RWP), and Evergreen National Corp. (mentioned in the Complaint only in its capacity as sole general partner of RWP).

(Id. ¶ 25.)  The Complaint alleges that Salvatore induced plaintiffs to hold the Shares rather than sell them at a favorable market price, "underst[anding] and intend[ing] that their doing so would contribute to his ability to receive [] financial benefit."  (Id. ¶ 26.)  Plaintiffs held the shares in reliance on Salvatore's guarantee and ultimately received only $3000, allowing SAI to overcome its financial difficulties, thereby benefitting Salvatore himself.  (Id.)

**III. DISCUSSION**

    **A. Breach of Contract**

To prevail on a breach of contract claim, the plaintiffs must show "(1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages."  Alliance Group Serv., Inc. v. Grassi & Co., 406 F. Supp. 2d 157, 163 (D. Conn. 2005) (citing Bouchard v. Sundburg, 834 A.2d 744, 751 (Conn. App. 2003)).  Defendant argues that plaintiffs' allegations are insufficient to state a breach of contract claim because defendant was not a party to the Agreement in his individual capacity, and because Evergreen Investments, the only party to the Agreement who is also a plaintiff, suffered no damages.

    **1. Formation of agreement by Salvatore individually**

Although there is no mention of TJS Management in the body of the Agreement or on the letterhead, Salvatore argues that the

fact that his authority to act as the representative of TJSP in signing the Agreement should be inferred from previous similar written agreements.  In support, defendant proffers three earlier letter agreements, dated July 20, 2000 (Def. Mot. to Dismiss [Doc. #20] at Ex. D), June 22, 2001 (id. at Ex. E), and July 5, 2001 (id. at Ex. F), similar in content to the August 22 Agreement, but printed on TJS Management letterhead.  Defendant states that "the final two letters were prepared on paper printed from Defendant Salvatore's business computer with the automatic business heading programmed therein," which did not include "TJS Management, L.P." but did "contain the same business address and phone number of TJS."  (Id. at 11.)

Plaintiffs' breach of contract claim relies solely on the August 22 Agreement, which by its terms "supersedes all prior agreements, whether written or oral" (Compl. at Ex. A).  One reading of the August 22 Agreement is that Salvatore's guarantee was personal and not made in any representative capacity. Salvatore did not include a title (or other indication of representative capacity) on his signature line.  See Ne. Gunite & Grouting Corp. v. Chapman, 565 A.2d 256, 258 (1989) ("The defendant's signature does not indicate that he signed in a representative capacity because he did not affix any title beneath his signature.").  The use of only first- and second-person pronouns in the Agreement further supports a reading of

Salvatore's signature as a personal guarantee: "When this agreement terminates . . ., all sums due you . . . will be satisfied by me in cash. . . ."  (Compl. at Ex. A.)  Moreover, the body of the Agreement makes no mention of the other entities, namely TJSP and TJS Management, which defendant references in his Motion to Dismiss.

Plaintiffs, while alleging that "Salvatore entered into a series of written agreements" (Compl. ¶ 15), did not include these other letter agreements as exhibits.  In ruling on a motion to dismiss, courts may consider documents incorporated within the complaint by reference, not only those attached to the complaint. Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002) (citing Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).  Thus, defendants' exhibits D, E, and F are properly before the Court in support of the Motion to Dismiss.  These three agreements, which precede the August 22 Agreement, are printed on "TJS Management, L.P." letterhead and include the line, "Thomas J. Salvatore, Managing Partner."  (See Def. Exs. D, E, F.)  However, as with the August 22 Agreement, no title is affixed below Salvatore's signature, and first- and second-person pronouns are used throughout the contracts.  (See id.)  Most important, and as stated above, the August 22 Agreement supersedes these earlier documents.

The Court finds, therefore, that plaintiffs' Complaint

sufficiently alleges that Salvatore individually is a party to the August 22 Agreement, written on what appears to be defendant's personal letterhead and signed by Salvatore with no title.

### 2. RWP and Plaster individually as parties

Defendant further argues that the only plaintiff that was a party to the Agreement was Evergreen Investments LLC and that therefore the other plaintiffs, RWP and Plaster individually and as Trustee, have no standing because they were not parties to the Agreement.[5]  The Court disagrees as to plaintiffs RWP and Plaster individually, but agrees as to Plaster as Trustee.

First, RWP, as record-owner of the Shares being represented by its agent Evergreen Investments, is a proper party to the agreement as an undisclosed principal.  "The law presumes that the principal is a party unless explicitly excluded by agreement." Comind, Companhia de Seguros v. Sikorsky Aircraft, 116 F.R.D. 397, 407 (D. Conn. 1987) (citing Robert Lawrence Assocs. v. Del Vechhio, 420 A.2d 1142, 1149 (Conn. 1979)).  Furthermore, "it is the general rule that an undisclosed principal may at any time appear in his true character and claim

---

[5] On October 21, 2004, the Robert W. Plaster Trust brought an action against Salvatore in Connecticut Superior Court which Defendant represents was dismissed for lack of standing.  Plaster v. Salvatore, No. FST-CV-04-4002013-S.  The court docket indicates that a motion to dismiss was granted on December 13, 2004, but the decision is unpublished.

all the benefits of an agreement from the other contracting parties since the contract of an agent is in law the contract of the principal." <u>Robert Lawrence</u>, 420 A.2d at 1149.  Here, the Complaint alleges that the Agreement was executed by Salvatore and Evergreen Investments, as an agent for RWP, the undisclosed principal.  (Compl. ¶ 15.)  Since the Agreement does not explicitly exclude RWP, it is sufficiently pleaded to be party to the agreement and thus has standing.

Second, the Complaint supports a claim that Plaster individually has standing to assert breach of contract.  While the letter was "agreed and accepted" by Larry Weis, "V.P. Evergreen Investments, LLC," on Plaster's signature line, the text of the Agreement can be read to represent an agreement between Salvatore and Plaster as individual persons.  (<u>See</u> Compl. ¶¶ 12, 15; Ex. A.)  The Agreement is addressed to Plaster – the salutation reads "Dear Bob" – and the signature line has printed below it "Robert W. Plaster" and "Date," with no title.  (<u>Id.</u> at Ex. A.)  Furthermore, the Agreement uses the first and second person throughout, which suggests, as plaintiffs argue, that it was an agreement between two principals, Salvatore and Plaster, who were less than meticulous in noting which entities they represented, if any.[6]  (Pls.' Opp. Mem. at 10.)  It can therefore

---

[6]The Agreement is replete with undefined first and second person pronouns: "I will advise you with regard to the potential disposition of . . . the shares;" "any excess value . . . will be

be inferred that Weis signed the Agreement as an agent for Plaster as well as for RWP.

The Court thus concludes that both RWP, as undisclosed principal, and Plaster may be proved parties to the Agreement.

### 3. Plaster as Trustee as a party

Plaintiff Plaster as Trustee of the Trust, however, has no standing because he is neither a signatory, a principal or an agent, nor a third-party beneficiary of the Agreement. The Complaint does not allege that Plaster as Trustee is either a principal or an agent, nor is there anything in the Agreement to suggest this. Plaintiffs do argue, however, that Plaster as Trustee was the ultimate beneficiary of Salvatore's promise, perhaps because the Trust is a 99.9% owner of Evergreen Investments as well as a limited partner of RWP. (See Pls. Opp. Mem. [Doc. #21] at 13; Compl. ¶¶ 3, 4.)

"[T]he intent of both parties, rather than just one of the parties to a contract, determines whether a third party is to be afforded third-party beneficiary status under the contract." Grigerik v. Sharpe, 721 A.2d 526, 539 (Conn. 1998). A "direct, not an indirect or derivative, obligation must be undertaken by both parties, and . . . third-party beneficiary status is not

---

applied 75% to your account and 25% to my account;" "Any losses . . . will be applied to my account;" "any shortfall remaining will be satisfied by me in cash . . .;" "you will timely inform me of any sale transaction you effect in the stock." (Compl. at Ex. A.)

established merely by showing that one will receive some benefit from the contract or that one is affected by it." Collins v. Anthem Health Plans, Inc., No. X01CV990156198S, 2000 WL 1768354, at *8 (Conn. Super. Ct. Oct. 31, 2000).

While plaintiffs have alleged in the Complaint that the Trust derives benefit from the Agreement, there is no mention in the Agreement of a third-party beneficiary. (Compl. at Ex. A.) There is also no indication in the contract that it was Salvatore's intent to assume a direct obligation to a third-party beneficiary. As plaintiffs have repeatedly argued, the only references to any entities in the Agreement are in the form of pronouns "you" and "me." (See Pls. Opp. Mem. at 11.) Plaster and/or RWP cannot unilaterally confer third-party beneficiary status upon the Trust. Therefore, Plaster as Trustee has no standing to bring a breach of contract claim against Salvatore.[7]

---

[7] Defendant also makes the argument that, since he believed he was dealing with the true owner of the shares but was in fact dealing with an allegedly authorized agent for an undisclosed third party, there was no meeting of the minds and hence no contract. "To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . If the minds of the parties have not truly met, no enforceable contract exists. . . . [A]n agreement must be definite and certain as to its terms and requirements. . . So long as any essential matters are left open for further consideration, the contract is not complete." Nova Dye & Print Co. v. Winogradow, No. CV990153399, 2001 WL 543236, at *6 (Conn. Super. Ct. May 4, 2001). Irrespective of the relationship between Evergreen Investments and RWP, the meeting-of-the-minds requirement may be shown to exist in the present situation, because the requirement covers contract obligations and not the secret identity of the bargainers.

4. <u>Evergreen Investments has incurred damages</u>

Defendant does not dispute that Evergreen Investments is a party to the August 22 Agreement.  He argues, however, that since Evergreen Investments is not the record-owner of the Shares, it fails to satisfy the fourth element of a breach of contract claim, damages, because it suffered no loss as a result of the sale.  (<u>See</u> Def. Mot. to Dismiss at 14-15.)

As signatory to the Agreement, Evergreen Investments can bring suit as agent for RWP, an undisclosed principal.  "An agent purporting to act upon his own account, but in fact making a contract on account of an undisclosed principal, is a party to the contract."  Restatement (Second) of Agency § 311 (1958).  <u>See also</u> <u>In re Dunlap</u>, 56 F.2d 601 (2d Cir. 1932) (<u>per curiam</u>) (holding that selling agent for an undisclosed principal could sue in his own name); <u>cf.</u> <u>Murphy v. Dell Corp.</u>, 440 A.2d 223, 224 (1981) (holding that agent for principal could not avoid liability in breach of contract case if he did not disclose that status to other contracting party).  The Court therefore finds that Evergreen Investments has standing to bring suit in this breach of contract action.

**B. Imposition of constructive trust**

Plaintiffs present Count Two of their Complaint as a claim

---

Either way, Salvatore intended to bargain with the record owner of the shares and, according to the Complaint, he did.

for "constructive trust," the relief sought for alleged breach of defendant's fiduciary duty to plaintiffs.

> A constructive trust is an equitable remedy, necessarily flexible to accomplish its purpose. . . . Its purpose is to prevent unjust enrichment, although unjust enrichment does not necessarily implicate the performance of a wrongful act. . . . What is necessary is that the court identify a party who is holding property 'under such circumstances that in equity and good conscience he ought not to retain it.'

Counihan v. Allstate Ins. Co., 194 F.3d 357, 361 (2d Cir. 1999) (internal citations omitted); see also Wendell Corp. Trustee v. Thurston, 680 A.2d 1314, 1317 (Conn. 1996) (A constructive trust may be imposed "against one who, by fraud, actual or constructive, by duress or by abuse of confidence or by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold or enjoy.").

In order to impose a constructive trust, "there must be a duty owed, or a fiduciary or other special relationship between the parties." Swift v. Ball, No. CV010344047S, 2005 WL 648145, at *7 (Conn. Super. Ct. Feb. 22, 2005). Defendant argues that the imposition of a constructive trust fails because there was no fiduciary relationship: the Agreement was an "arm's-length transaction" between two "business entities," neither of which had a high degree of control over the property of the other.

13

(See Def. Mot. to Dismiss at 16.)  According to the Complaint, however, Salvatore is a general partner of TJSP who therefore has a fiduciary duty to his limited partners.  "[G]eneral and limited partners are 'bound in a fiduciary relationship,' and, as such, must act as trustees and represent the interests of each other." Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 761 A.2d 1268, 1279 (Conn. 2000) (citing Konover Dev. Corp. v. Zeller, 635 A.2d 798, 804-05 (Conn. 1994)).  Plaintiffs allege that Plaster "invested in and, through Trust, became a limited partner of TJS Partners" in 1997, and that the Trust "assigned its interest in TJSP to RWP" in 1998.  (Compl. ¶ 9.)  On this basis, the Complaint sufficiently alleges that RWP and Salvatore stood in a fiduciary relationship.

Regarding the relationship between Salvatore and Plaster individually or as Trustee, the Complaint is sufficiently ambiguous to allow for the inference that either Plaster individually or Plaster as Trustee became a limited partner of TJS Partners in 1997.  The relevant section reads, "In or about 1997, Robert Plaster invested in and, through Trust, became a limited partner of TJS Partners, L.P. . . .  In April 1998, Trust assigned its interest in TJSP to RWP Consolidated."  (Compl. ¶ 9.)  If through discovery the assignment of the TJSP interest from Plaster to RWP is found to have been ineffective, then a fiduciary relationship would exist between Salvatore and

14

whichever plaintiff was the original limited partner.  A finding that assignment of interest was ineffective is not inconsistent with the allegations, and therefore it would be improper to dismiss the claim on the ground that either Plaster individually or as Trustee had already transferred his interest to RWP.

Plaintiffs' claim for imposition of constructive trust must also allege that Salvatore obtained legal right to plaintiffs' property to which he was not entitled in equity or in good conscience.  Although "Plaintiffs purchased the 300,000 Shares directly from SAI" (Def. Mot. to Dismiss at 15) and did not transfer the stock itself to defendant, plaintiffs allege that Salvatore was unjustly enriched by the recapitalization of SAI shares — as Salvatore was general partner of TJSP, SAI's largest shareholder — while plaintiffs received only $3,000 for their shares, which they could have sold earlier at a better rate had it not been for Salvatore's interference (see Compl. ¶¶ 25, 26). Thus, plaintiffs do plead in the Complaint that defendant obtained legal right to their property, in the form of the value of the SAI Shares after recapitalization.

Finally, plaintiffs' claim must allege that Salvatore used questionable means to acquire this property.  Plaintiffs allege that Salvatore engaged in self-dealing by inducing plaintiffs not to sell the Shares at a favorable price, knowing that this would allow SAI to recapitalize and overcome its financial

15

difficulties, thereby funneling money back to himself as a TJSP partner.  (See Compl. ¶ 26.)  Plaintiffs also allege that Salvatore knew when he first induced plaintiffs to hold onto the Shares that he would personally receive financial benefit from SAI's recapitalization and subsequent financial recovery.  (Id.)

Plaintiffs RWP, Plaster individually and Plaster as Trustee have sufficiently alleged that Salvatore and plaintiffs stand in a fiduciary relationship,[8] that Salvatore has obtained or will obtain property (the benefits from his affiliation with SAI as a result of the recapitalization) to which he is not entitled, and that Salvatore used questionable means (self-dealing resulting in financial injury to plaintiffs) to obtain this property, thereby stating a claim for imposition of a constructive trust.  Plaintiff Evergreen Investments, however, is not alleged to have ever had a fiduciary relationship with Salvatore, and no inference of such a relationship can be made from the allegations in the Complaint.  Therefore, defendant's Motion to Dismiss Count Two is granted with respect to Evergreen Investments only.

**IV. CONCLUSION**

For the foregoing reasons, defendant's Motion to Dismiss [Doc. # 20] Count One is GRANTED as to Plaster as Trustee of the

---

[8]Salvatore does not simultaneously have a fiduciary duty to RWP, Plaster individually and Plaster as Trustee of the Trust, but only to the one determined to be a limited partner of TJSP at the time of execution of the August 22 Agreement.

16

Trust and the motion to dismiss Count Two is granted as to Evergreen Investments.  The remainder of the Motion is DENIED.

           IT IS SO ORDERED

           /s/

           _____
           JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 7th day of November, 2006.**