UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RWP Consolidated, L.P., Evergreen Investments, LLC, and Robert W. Plaster,<br>    *Plaintiffs*,<br><br>    *v.*<br><br>Thomas J. Salvatore,<br>    *Defendant*. | Civil No. 3:05cv1901 (JBA) |

**RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION**

Plaintiffs RWP Consolidated, L.P. ("RWP"), Evergreen Investments, LLC ("Evergreen"), and Robert W. Plaster ("Plaster") brought this breach-of-contract action against defendant Thomas J. Salvatore ("Salvatore"). After a short bench trial, the Court found in favor of Plaintiffs and entered judgment in the amount of $2,200,570.08. (Bench Ruling, May 18, 2007, ["Ruling"] at 26.) Defendant subsequently moved for reconsideration and/or alteration of the Court's final disposition [Docs. # 73, 74, 77] and for a stay of execution on the judgment [Doc. # 78]. For the reasons that follow, these requests for relief are denied.

**I.    Standard**

Motions for reconsideration are implicitly authorized by Local Rule of Civil Procedure 7(c)1, which provides that such motions "shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." A court's reconsideration power is related to the "amorphous" law-of-the-case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Rezzonico v. H&R Block*,

182 F.3d 144, 148 (2d Cir. 1999).  But notwithstanding the value of finality in litigation, this doctrine does not bind a court to its earlier holdings in a case if they are "clearly erroneous and would work a manifest injustice." *Arizona*, 460 U.S. at 619 (citing *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir. 1967)).  Following the standard laid out in *White*, the Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478 (2d ed. 2007)).  This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  If "the moving party [is] seek[ing] solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision.  *Id.*

## II. Discussion

The relevant facts are set out in the Court's May 18, 2007 bench ruling.  (Ruling at 2–7.)  Briefly stated, this case arises out of a "Letter Agreement" dated August 22, 2002 concerning Plaster's interest in SAI, a publicly-traded company controlled by Salvatore.  According to this agreement, the Court concluded, Salvatore promised to personally guarantee that Plaster would not incur any loss on his 300,000 shares of SAI stock below a certain amount ($1.77 million plus interest) provided that Plaster refrained from selling this stock.  The agreement further provided a mechanism by which the parties would share the proceeds should the stock sell for more than $1.77 million; but because SAI stock was ultimately cashed out at one cent per share, this profit-

sharing mechanism was never triggered. The Court ultimately found this agreement valid and enforceable, and awarded Plaintiffs damages of $1.77 million, less the $3,000 Plaster received for his stock, plus 4.75% annual interest. Salvatore now seeks reconsideration of this holding on two grounds: (1) that the Court's application of agency principles was flawed; and (2) that the Court erred in finding the agreement enforceable under federal securities law.

### A. Agency

The parties agree on the general principles of agency law which govern the case. In its bench ruling, the Court quoted Connecticut law and language from the Restatement in explaining the agency principles on which it was relying in reaching its decision:

> Under Connecticut law, which follows the Restatement approach to agency, where a contracting party is the agent for another entity, "the principal becomes a party to the contract by operation of law, without the will of the third party." . . . An implied agency relationship exists if there is: "One, a manifestation by the principal that the agency will act for him; two, acceptance by the agent of the undertaking; and three, an understanding between the parties that the principal will be in control of the undertaking.["] *Beckenstein v. Potter & Carrier, Inc.*, 464 A.2d 6 (Conn. 1983).
>
> From [the] Restatement (Second) of Agency, Section 302 (1958): "A person who makes a contract with an agent of an undisclosed principal, intended by the agency to be on account of his principal and within the power of such agent to bind his principal, is liable to the principal as if the principal himself had made the contract with him, unless he is excluded by the form or terms of the contract, unless his existence is fraudulently concealed, or unless there is a set-off or similar defense against the agent."

(Ruling at 8–9.) Salvatore objects to the sufficiency of proof in these respects, contending that "[t]here is no proof of a manifestation by RWP that any agent would act for it in connection with the Letter Agreement;" that it is "a logical impossibility for Evergreen Investments to have accepted an agency from a principal it did not know"; and "[t]here needed to be some showing that RWP exercised control over Evergreen Investments with regard to this undertaking."

3

(Def.'s Mem. [Doc. # 73] at 5–6, 10–11.) These arguments arise out of the way in which Plaster manages his business interests. RWP is an entity which serves as an investment vehicle for Plaster, and was the record holder of the SAI stock at issue. Evergreen Investments, a limited liability company controlled by Plaster, was described in trial testimony as the entity responsible for "manag[ing] the investments of [Plaster's] holdings and other entities." (Ruling at 4.) Larry Weis, Plaster's personal CEO, signed the Letter Agreement in his capacity as vice-president of Evergreen.

Against this background of fact and law, Defendant's bases for seeking reconsideration on the question of agency are insufficient. In its bench ruling, the Court concluded, in pertinent part:

> Weis and Plaster testified that Evergreen Investments was the agent for all of Plaster's entities, serving as a source of advice, screening potential investments, providing operational support, and deciding "which basket to put each transaction in." That Evergreen Investments performs this agency function for many entities does not legally detract from the fact that it did so for RWP, one of Plaster's entities. . . .
> 
> From Weis's testimony about the business relationship and functioning between Evergreen Investments and RWP and the recognition by all witnesses that Plaster exercised full formal control over all his entities, plaintiffs have met their burden of showing that RWP, whose sole limited partner was Plaster through his trust, authorized Evergreen Investments to act for it and that Evergreen Investments performed accordingly, and that Evergreen Investments was entering the agreement on behalf of the record holder of the subject 300,000 SAI shares, which turned out to be RWP. . . .
> 
> RWP, through Plaster, unquestionably controlled the disposition of the SAI shares it held, and the ongoing function of Evergreen Investments was to execute decisions on such dispositions. [Its] role was to act in accordance with the directives of the entities it serviced, including RWP; it knew of this responsibility vis-a-vis the SAI shares being held by RWP since it was Evergreen Investments that initially placed the SAI stock purchase with Evergreen National, which became RWP. . . .

4

> The documentary and testimonial evidence of record supports the conclusion that defendant intended to enter into an agreement with Plaster and Evergreen Investments as the holder of the denominated SAI shares. That RWP, who turns out to be the entity selected by Evergreen Investments to hold the shares, was unknown to defendant is of no consequence, as that is by definition the nature of an undisclosed principal.

(Ruling at 10–14.) Salvatore's current arguments do not demonstrate how the Court's description and application of agency principles constituted clear error. The evidence at trial was adequate to support a finding that the requisite elements of agency—according to the Connecticut Supreme Court and the Restatement—had been met. Defendant contends that the evidence needed to show that RWP had expressly manifested an intent for Evergreen to act on its behalf and be subject to its control with respect to the Letter Agreement. But this is contrary to the conception of implied agency agreed to by the parties. The evidence showed that (1) RWP intended for Evergreen to act for it on investment matters, (2) Evergreen agreed to this relationship, and (3) RWP would retain ultimate control as the principal. That RWP did not specifically direct Evergreen (via Weis) to enter into this agreement is irrelevant, for Evergreen had the authority to act for RWP generally in these matters—indeed, this relationship with respect to RWP and Plaster's other business entities was Evergreen's raison d'être.

Salvatore is merely relitigating an issue which the parties fully argued and the Court necessarily decided in finding for Plaintiffs. There has been no showing of facts the Court overlooked, legal authority the Court misapplied or ignored, or intervening changes in the relevant law. Nor has Defendant convinced the Court that its conclusion on this issue is manifestly unjust. Thus, the motion for reconsideration is denied.

### B. Unenforceability of the Letter Agreement

As an additional basis for reconsideration, Salvatore contends that the Letter Agreement

is unenforceable because its terms called for the parties to violate § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder. Specifically, the Defendant argues that "the Court in addressing the insider issue did not consider in its ruling that it was a violation of the insider trading laws for Salvatore . . . to have acquired a position in the 300,000 Shares secretly and without public disclosure." (Def.'s Mem. at 2.) Salvatore characterizes this position as a "put option," thereby "guarantee[ing] that Plaster could not lose money on his prior investment." (Def.'s Reply at 5.) Thus, "Plaster's possession of material, non-public information, coupled with his fiduciary duty to SAI and the other SAI shareholders, would have made any trade by Plaster in the 300,000 Shares or his entry into the Letter Agreement illegal." (Def.'s Mem. at 16.) Plaintiffs counter by arguing (1) that Salvatore has not pled these allegations of securities violations with sufficient particularity as required by Rule 9(b); (2) that there was no securities transaction; (3) that Plaintiffs did not possess material non-public information; (4) that Salvatore, as the putative source of inside information, cannot now benefit by voiding the contract; and (5) that to the extent any terms of the agreement are found illegal, they are severable.

For the Letter Agreement to be unenforceable as illegal under federal law and thus contrary to public policy, the terms of the agreement must be such that the parties engaged in a transaction which would give rise to liability under the securities laws. Though the parties do not discuss it, the 1934 Act itself provides a mechanism for voiding an illegal contract in § 29(b), under which "[e]very contract made in violation of any provision of [the Act] or of any rule or regulation thereunder . . . shall be void." 15 U.S.C. § 78cc(b). By the Supreme Court's reading, this means that a "guilty party is precluded from enforcing the contract against an unwilling innocent party." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 387 (1970); *S.E.C. v. Levine*, 881

F.2d 1165, 1175–76 (2d Cir. 1989) (following *Mills*). According to other courts, a party seeking to void a contract under § 29(b) "must show that (1) the contract involved a prohibited transaction, (2) he is in contractual privity with the defendant, and (3) he is in the class of persons the Act was designed to protect." *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992) (citing *Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552, 559 (5th Cir. 1982)) (quotation marks omitted). But before reaching the voiding remedy of § 29(b), there must first be an underlying securities violation, such as a transaction contrary to § 10(b) and Rule 10b-5. *Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 206 n.4 (2d Cir. 1989); *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006) ("Section 29(b) itself does not define a substantive violation of the securities laws; rather, it is the vehicle through which private parties may rescind contracts that were made or performed in violation of other substantive provisions.").

Section 10(b) prohibits the "use or employ[ment]" of "any manipulative or deceptive device" "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). Implementing this section, the SEC promulgated Rule 10b-5, which makes it unlawful

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. In a typical insider trading action brought pursuant to these provisions, a plaintiff must prove several elements: (1) "a material misrepresentation (or omission)"; (2) "scienter, i.e., a wrongful state of mind"; (3) "a connection with the purchase or sale of a

7

security"; (4) "reliance," also termed "transaction causation"; (5) "economic loss"; and (6) "loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Dura Pharms. v. Broudo*, 544 U.S. 336, 341–42 (2005) (quotation marks omitted). According to the "traditional theory of insider trading liability," a person can be liable for fraud under Rule 10b-5 "only if he 'fails to disclose material information prior to the consummation of a transaction . . . when he is under a duty to do so." *United States v. Chestman*, 947 F.2d 551, 564–65 (2d Cir. 1991 (quoting *Chiarella v. United States*, 445 U.S. 222, 228 (1980)). This is termed the "disclose or abstain" rule. *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 848 (2d Cir. 1968); *In re Cady, Roberts & Co.*, 40 S.E.C. 907 (1961). The wrongful conduct element may also be met when "a tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material nonpublic information" by way of an "insider [who] has breached his fiduciary duty to the shareholders by disclosing the information to the tippee[,] and the tippee knows or should know that there has been a breach." *Dirks v. SEC*, 463 U.S. 646, 660 (1983).

It is not clear that all of these elements comprising a proper Rule 10b-5 action have been alleged, let alone proven, by Salvatore. His explanation for why there would be 10b-5 liability here—a condition precedent to voiding the contract—is that the Court found certain information relayed by Salvatore regarding SAI's strategic planning, which should have been disclosed by Plaster, as a tippee, before selling an interest in his shares. But application of Rule 10b-5 to this course of conduct is not so straightforward. As the alleged tipper, Salvatore himself must have breached a fiduciary duty, which would not be established merely by disclosing inside information, as he suggests: "[a]ll disclosures of confidential corporate information are not inconsistent with the duty insiders owe to shareholders." *Dirks*, 463 U.S. at 661–62. Defendant must also prove that the subject matter of the Letter Agreement amounted to a purchase or sale

8

of a security, which, given that the agreement principally relates to the decision *not* to sell the SAI stock, requires evidence or authority beyond Defendant's conclusory arguments. To be liable, Plaster must also have acted with the requisite mental state, which is at least recklessness, *SEC v. U.S. Envtl.*, 155 F.3d 107, 111 (2d Cir. 1998), and have proximately caused economic harm through his wrongful conduct, 15 U.S.C. § 78u-4(b)(4); *Rothman v. Gregor*, 220 F.3d 81, 95 (2d Cir. 2000). Defendant's proof is insufficient in each of these respects.

In sum, although Plaintiffs' contention that Salvatore did not sufficiently plead the fraudulent elements in accordance with federal pleading rules is a bit misdirected at this stage in the litigation, the substance of this objection is nevertheless sound: Defendant's argument that the Letter Agreement violated § 10(b) and Rule 10b-5 glosses over the several, highly factual elements that must be proven to find a transaction unlawful. As a part of his defense of illegality, it is Salvatore's burden to prove each of these elements, and he has not done so. Therefore, the Court concludes that there is an insufficient showing that the Letter Agreement is void and unenforceable as illegal. With no demonstrated need to correct clear error or prevent manifest injustice, Defendant's motion for reconsideration is denied with respect to this issue as well.

### C. Remaining Issues

Salvatore also contends that, if the Letter Agreement is enforced, Plaster must comply and allocate the appropriate tax losses to him. However, the Court explained in its ruling:

> Salvatore's testimony that "part of the reason" that he did not fulfill his obligation on the agreement was because Plaster failed to tender him the tax loss is not credible. Plaintiffs' Exhibit 27 demonstrates more accurately how Salvatore viewed the capital loss attribution: Salvatore stated to Plaster with respect to the SAI shares, "it is a 2003 capital loss for you," meaning Plaster, "worth maybe $300,000"; as plaintiff logically reasoned, defendant gets a loss when defendant pays his obligation, [and] before then he has no loss. Thus,

9

plaintiffs cannot be said to have failed to perform their end of the bargain.

(Ruling at 24–25.)

Finally, Defendant seeks a stay of execution on the judgment pending the outcome of his motion for reconsideration. Given the conclusion above that the bases for reconsideration are without merit, this additional request for relief is denied.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Reconsideration, to Alter or Amend the Judgment and to Stay Execution of the Judgment Pending a Decision on this Motion [Docs. # 73, 74, 77, 78] is denied.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of February, 2007.